LAW OFFICES OF GEORGE N. PROIOS, PLLC
Attorneys for Plaintiff
65 West 36th Street
New York, NY 10018-7702

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ECF Case**

BUNKERS INTERNATIONAL CORP.

        Plaintiff,

**09 CV**

    v.

BEREKET SHIPPING INTERNATIONAL S.A.,

        Defendants.

**VERIFIED COMPLAINT WITH
REQUEST FOR ISSUE OF
WRITS OF MARITIME
ATTACHMENT AND
GARNISHMENT**

---

Plaintiff Bunkers International Corp., (hereinafter "BI") complains of the Defendant Bereket Shipping International S.A. (hereinafter "Bereket") and alleges upon information and belief as follows:

1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 in that this case concerns the breach of a maritime contract, namely, failure to pay for marine fuel.

2.    At all material times, BI was and is now a company organized and existing under the laws of Florida.

3.    At all material times, Bereket was and is now a corporation organized and existing under the laws of St. Kitts & Nevis.

## THE BASIC FACTS

4.      On or about August 28, 2008, BI sold marine fuel to defendants for the fueling of the M/V BEREKET, an ocean cargo vessel that Defendant owned, operated or chartered. Although Defendant made some payments, Defendant, however, did not pay for all of that fuel or pay certain contractual charges which Defendant had agreed with BI to pay.  Exhibit A hereto sets out BI's confirmation for the sale to defendant, invoices for the sale, and BI's terms and conditions of sale.

5.      BI 's terms and conditions of sale require Defendant to pay BI all attorneys fees and related costs of collection if Defendant  fails to pay BI.  The amount that Defendant owes to BI, including contractual interest and related charges, is at least $75,403.29   plus an estimated $10,000 for attorneys fees and costs, all totaling $85,403.29.

## COUNT I
## RULE B RELIEF

6.      Plaintiff repeats paragraphs 1 through 5 as if fully set forth herein.

7.      Plaintiff seeks issuance of process of maritime attachment so that it may obtain security for its claims including its contractual attorneys' fees and costs. No security for Plaintiff's claims has been posted by Bereket or anyone acting on its behalf to date.

8.      Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but is believed to have, or will have during the pendency of this action,

assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of

garnishees in this District, including but not limited to electronic fund transfers and/or CHIPS

credits, because Defendant conducts business internationally in U.S. Dollars, and all electronic

fund transfers are processed by intermediary banks in the United States, primarily in New York.

### Defendant's Specific Accounts and Assets Which Are Located in, or May Be Reached in, this District

9.      In particular, Defendant maintains accounts at Garanti Bank, Istanbul, Turkey,

which as confirmed by the Garanti Bank web site, listing its New York correspondent banks

(http://www.garantibank.com/branches_and_atms/correspondent_banks.html) sends and receives

international USD-denominated wires through the named garnishees:  AMERICAN EXPRESS

BANK, NEW YORK, BANK OF NEW YORK, NEW YORK, BANKAMERICA

INTERNATIONAL, NEW YORK, CITIBANK N.A., NEW YORK, DEUTSCHE BANK TRUST

CO, NEW YORK, JP MORGAN CHASE, NEW YORK, STANDARD CHARTERED BANK,

NEW YORK , WACHOVIA BANK, NEW YORK   These named garnishee banks participate in

the CHIPS system in New York to send U.S. dollar wire transfers between banks in the United

States and throughout the world. Also participating in the CHIPS system is HSBC Bank, USA.  It

is more likely than not that some payments being made to the Defendant may originate through, or

be routed through HSBC Bank USA, for further credit to Defendant's accounts at Garanti Bank

and/or its correspondent banks listed herein, therefore, HSBC Bank USA should be included as

garnishee bank.  Accordingly, Plaintiff believes that some assets of Defendant in U.S. dollars

EFTS will be transferred through intermediary CHIPS banks, including the named garnishee

banks.

10.    Further, Defendant's vessel M/V BEREKET presently is chartered to an entity owned or controlled by Arcelor Mittal, a large international steel company, at a rate of approximately USD $3,000 per day. A copy of this charter fixture is Exhibit B hereto. Funds from marine charter parties typically are transferred by wire, processed through intermediary banks such as the garnishees herein. Garnishee ArcelorMittal Shipping Limited, which by information and belief is the shipping arm of Arcelor Mittal, is by information and belief the Arcelor Mittle entity which is charterer of the vessel. ArcelorMittal Shipping Limited is present in this District, having appointed a Resident Agent here (Corporation Service Company, 1133 Avenue of the Americas, New York, New York).

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That since Defendant cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of their tangible or intangible property or any other funds held by any garnishee, which are due and owing to this defendant up to the amount of at least $85,403.29 to Plaintiff, which includes interest and reasonable attorneys' fees and costs to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

C.    That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in

substantial economies in time and expense, such a person be appointed pursuant to Fed.R.Civ.P.

4(c) to serve process of Maritime Attachment and Garnishment in this action.

D.    That this Court retain jurisdiction over this matter through the entry of a judgment

or award associated with the pending claims including appeals thereof.

E.    That each Plaintiff may have such other, further and different relief as may be just

and proper.

Dated: New York, NY
        October 16, 2009

Respectfully submitted,
Law Offices of George N. Proios, PLLC
Attorneys for Plaintiff

By:  _____
        George N. Proios
        65 West 36th Street
        New York, NY 10018-7702
        (212) 279-8880

OF COUNSEL:
J. Stephen Simms
John T. Ward
Simms Showers LLP
20 S. Charles Street - Suite 702
Baltimore, Maryland 21201
410-783-5795



# ENERGY

## BUNKER DELIVERY RECEIPT

| NAME OF VESSEL | BEREKET | DELIVERY DATE : 10.09.08 |
| IMO NUMBER | 7725594 | HOURS : 22 20 40 20 |
| PORT OF DELIVERY: | ISTANBUL | BARGE    C.ERGÜN KAPTAN |

| PRODUCT NAME | IFO | IFO | GASOIL |
| --- | --- | --- | --- |
| METRIC TONS | 100 | | 10 |
| DENSITY at 15°C | 0.9593 | | 0.8568 |
| VISCOSITY at 50°C | 180 cst | | 3.5 cst |
| FLASH POINT °C | 110 | | 65 |
| POUR POINT °C | 2 | | -10 |
| SULPHUR WT % | 2.50 | | 1 |

WE CERTIFY AND CONFIRM THAT WE REQUIRED AND RECEIVED ABOVE TYPE AND QUANTITY BUNKER AND SEALED SAMPLE AND BELOW WARNING. QUANTITIES ARE CORRECT AND PRODUCT RECEIVED IN GOOD CONDITIONS BY THE VESSEL

WATER TEST APPLIED AND FOUND NO WATER.
RECEIVING SHIP'S STAMP AND/OR SIGNATURE OF SHIP'S REPRESENTATIVE



SUPPLIER DECLARATION FOR MARPOL ANNEX VI

SUPPLIER CONFIRMS THAT FUELOIL SUPPLIED COMPLY WITH MARPOL ANNEX VI REGULATIONS NUMBER 14 (1) AND REGULATION NUMBER 18 (1)

SUPPLIER AND BUNKER RECEIVING SHIP CONFIRM THAT MARPOL SAMPLES ARE TAKEN AS PER MARPOL ANNEX VI REGULATIONS. MARPOL SAMPLE SEAL NUMBER .............. 3720

Warning: Deliveries of marine bunkers against his receipt, delivered/received on board are for use as bunkers and for account of the owners, and/or managing owner and/or managers of the vessel as well as to many other vessels owned/managed by the same managers/owners as appearing on lloyds registers or shipping and any other shipping directories, and/or for account of charterers. And any of the above mentioned concerned are individually and or jointly responsible for payment of the bunkers supplied to the vessel without any protest. Any non-liability stamp will be of no effect or validity. Quantities as per barge figures only and no shortage claim accepted based on ship figures. Once supplier's shipping barge and/or shore tanks have been measured by the ship's representatives before and after delivery to the vessel, no remarks/annotations whatsoever in bunker/supplied will be accepted by supplier. Quantities supplied are seashore and or use of bunker taking vessel only. Any spillage on board will be sole responsibility of bunker taking vessel. If the ship is unable to take full quantity, all expenses of returning the product will be for buyer's/vessel's account.

Supplier
ENERJİ PETROL DENİZCİLİK TİCARET VE SANAYİ A.Ş.
Rüsamiman Cad. No: 8/3  04674 Üsküdar - Istanbul / TURKEY

**Exhibit A**


**BUNKERS INTERNATIONAL**
Fueling Global Trade

THANK YOU
FOR YOUR
BUSINESS

**ORIGINAL INVOICE**

| DATE FUELED | INVOICE # |
|---|---|
| 8/20/2008 | BKTINV00380 |

**BILL TO**
BEREKET SHIPPING INTERNATIONAL SA
and/or Master, Owners, Operators
Charterers, Managers, Managing Agents

and VESSEL     BEREKET

**SHIP TO**
BEREKET SHIPPING INTERNATIONAL SA
P O BOX 556 MAIN STREET
CHARLESTOWN
ST KITTS & NEVIS

| DEAL | VESSEL | Port | TERMS | DUE DATE | REP | INVOICE DATE |
|---|---|---|---|---|---|---|
| 1767 | BEREKET | ISTANBUL | 60 DOD | 10/19/2008 | TUR | 8/24/2008 |

| DESCRIPTION | PRODUCT | QUANTITY | RATE | AMOUNT |
|---|---|---|---|---|
| BUNKER DELIVERY TO THE BEREKET AT ISTANBUL ON AUGUST 20, 2008 | IFO 180 | 100.0000 | $725.00000 | $72,500.00 |
| | MGO | 10.0000 | $1,160.00000 | $11,600.00 |
| | BARGING | 1.0000 | $1,500.00000 | $1,500.00 |

NO BANK OR OTHERS ALLOWED     **Total**     **$85,600.00**

INTERNATIONAL WIRES:
Wachovia Bank, N.A.
11 Penn Plaza
NY NY 10038
Account: 2000034531886
SWIFT: PNBPUS33
Credit: Bunkers International Corp
110 Timberlachen Cir, Ste 1012 Lake Mary, Fl 32746

USA WIRES:
Wachovia Bank, N.A.
214 N Hogan Street   Jacksonville, FL
Account: 2000034531886
WIRE ABA: 063000021
ACH: 063107513
Credit: Bunkers International Corp
110 Timberlachen Cir Ste 1012 Lake Mary, Fl 32746

TEL: (407) 328-7757  FAX: (407) 328-0045  EMAIL: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com

 

**BUNKERS INTERNATIONAL**
Fueling Global Trade

## *CONFIRMATION*

**TO:**        Bereket Shipping International S.A
**ATTN:**   Mr.Muzaffer Senkaya
**DATE:**   22th August,2008
**REF:**      M/V Bereket

We are pleased to nominate the following:

| | | |
|---|---|---|
| **VESSEL:** | Bereket | |
| **PORT:** | Istanbul | |
| **ETA:** | 24/08/2008 | ETS:B.Only |
| **PRODUCT:** | IFO | MGO |
| **SPEC:** | Rme 180 | DMA |
| **QUANTITY:** | 100 mts | 10 mts |
| **PRICE:** | US$ 725.00 per mtw | US$ 1,160.00 per mtw |
| **DELIVERY:** | Barge | |
| **DELIVERY CHARGE:** | US$ 1,500.00 l/sum barging | |
| **ADDITIONAL CHARGE:** | None | |
| **SELLER:** | Bunkers International Corp. | |
| | 110 Timberlachen Circle Suite 1012 Lake Mary Florida | |
| | USA 32746 | |
| **PHYSICAL SUPPLIER:** | Enerji Petrol Denizcilik Ticaret Ltd. Sti. | |
| **BUYER:** | Bereket Shipping International S.A and jointly and | |
| | severally MV Bereket, her Master, Owners, Managing | |
| | owners/Operators, Managers, Disponent Owners and | |
| | Charterers | |
| **CREDIT TERMS:** | Payment to be made within 60 days from date of | |
| | delivery | |
| **AGENT:** | Ersen Denizcilik | |

**BUYER'S COMMENTS:** Please communicate closely with the agent to co-ordinate delivery with vessel. Please advise local supplier to provide and maintain reference samples, sealed and witnessed by ship's staff.

**SELLER'S COMMENTS:** Seller's / Supplier's Terms & Conditions to apply to this sale.(SELLER'S TERM AND CONDITIONS AVAILABLE AT:www.bunkersinternational.com) Please advise immediately if any part of this confirmation is unclear or incorrect. Information about this order is being sent to buyer and seller.

Thank you for your support.

Best regards,

Yusuf Donder

Bunkers International Ltd/Turkiye

As Agents for Bunkers International Corp



# BUNKERS INTERNATIONAL FINANCE

### INTEREST INVOICE

| DATE | INVOICE # |
|------|-----------|
| 10/7/2009 | INTINV00325 |

| BILL TO | SHIP TO |
|---------|---------|
| BEREKET SHIPPING INTERNATIONAL SA<br>and/or Master, Owners, Operators<br>Charterers, Managers, Managing Agents<br><br>and VESSEL      BEREKET | BEREKET SHIPPING INTERNATIONAL SA<br>P.O. BOX 556 MAIN STREET<br>CHARLESTOWN<br>ST KITTS & NEVIS |

| DEAL | VESSEL | TERMS | DUE DATE | REP | DATE FUELED |
|------|--------|-------|----------|-----|-------------|
| 354 | BEREKET | UPON RECEIPT | 10/7/2009 | TUR | 8/20/2008 |

| DESCRIPTION | PRODUCT | DAYS | RATE | AMOUNT |
|-------------|---------|------|------|--------|
| INTEREST INVOICE FOR THE  BEREKET  ORIGINALLY DUE OCTOBER 19, 2008 | INTEREST | 129 | 56.2850 | 7,260.76 |
| | INTEREST | 111 | 44.7781 | 4,970.37 |
| | INTEREST | 113 | 38.6650 | 4,369.14 |
| REFERENCE INVOICE NO: BKTINV00380<br>ORIGINAL AMOUNT: $85,600.00 | | | | |
| INTEREST CALCULATED:<br>(TOTAL INVOICE * 24%) /365 DAYS=DAILY<br>INTEREST RATE<br>DAILY INTEREST RATE * TOTAL DAYS LATE=<br>INTEREST AMOUNT | | | | |

### PLEASE NOTE NEW BANK DETAILS

BANK: REGIONS BANK

ADDRESS: 4094 W LAKE MARY BLVD.
LAKE MARY, FL 32746

ACCOUNT 47544651

ABA: 062000019

SWIFT: UPNBUS44

COLLECTING ON BEHALF OF:
BUNKERS INTERNATIONAL CORPORATION

### NO BANK DEDUCTIONS ALLOWED

| 110 Timberlachen Cir. Ste 1012<br>Lake Mary, Fl 32746 | Balance Due | $16,600.29 |
|---|---|---|

# BUNKERS INTERNATIONAL

Fueling Global Trade

## BUNKERS INTERNATIONAL CORPORATION
GENERAL TERMS AND CONDITIONS OF SALE FOR MARINE FUEL

Effective August 1st, 2007

1. Definitions

   In the agreement (hereinafter defined) the following terms shall have the following meanings:

   a. "the Agreement" means the Special Terms and General Terms;
   b. "barrel" or "bbl" means 42 U.S. standard gallons at 60 Fahrenheit;
   c. "BUYER" means a party obligated to buy Marine Fuel under this Agreement;
   d. "Delivery Date" means the date on which the Marine Fuel is to be delivered to the vessel by SELLER;
   e. "gallon" means a U.S. standard gallon of 231 cubic inches at 60 Fahrenheit;
   f. "General Terms" means these Bunkers International General Terms and Conditions of the Sale of Marine Fuel;
   g. "Marine Fuel" means the type(s) , quantity(ies) and commercial grade(s) of bunker fuel oil , intermediate fuel oil, ("IFO") , marine diesel oil ("MDO"), marine gas oil ("MGO") and/or other materials or petroleum products specified in the Special Terms which SELLER has agreed to sell to BUYER;
   h. "metric ton" or "MT" means a total of 2204,6234 pounds avoirdupois;
   i. "SELLER" means Bunkers International Corp.
   j. "Special Terms" means any form of agreement including, without limitation, a letter, fax letter or electronic mail, which to any extent incorporates by reference or is subject to the General Terms, including our confirmation or nomination of bunker stem.
   k. "Supplier" means the person or entity from whom the SELLER procures Marine Fuel for resale to the BUYER;
   l. "Supply Port" means the port at which the Marine Fuel purchased by the BUYER is to be delivered to the Vessel; and
   m. "Vessel" means the marine vessel or vessels to which the Marine Fuel purchased by the BUYER is to be delivered.

**TEL**: (407) 328-7757  **FAX**: (407) 328-0045  **EMAIL**: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com



**BUNKERS INTERNATIONAL**

Fueling Global Trade

2. Measurements, Tests, and Sampling

The quantity of Marine Fuel Delivered shall be measured by the SELLER or its Supplier and these measurements will be final and binding. Such quantity shall be determined by shore tank gauges or, if such is not available, by barge calibrated meter or, if such is not available, by barge or truck, volume measurement figures.

The BUYER may be present or represented by a properly accredited agent at all measurements, If BUYER is not present for before and after measurements of delivery equipment, then BUYER waives their rights to contest volume figures. Absent manifest error, the SELLER's determination of quantity shall be conclusive.

All measurements shall be adjusted to barrels or metric tons at 60 Fahrenheit temperature. All such adjustments shall be made in accordance with the latest joint Petroleum Measurement Tables of the American Petroleum Institute ("API"), the American Society of Testing and Materials ("ASTM") and the Institute of Petroleum ("IP") designated API D-2540, ASTM D-1250 and IP 200/52, respectively, whichever is in use at the Supply Port.

At least two commercial samples of the Marine Fuel shall be taken at the time of delivery from the terminal shore tank, load pipeline, delivery barge, or truck as appropriate, and sealed. These samples shall be considered the official commercial samples and the only representative samples of the delivery. The samples shall be taken by line-sampling devices, where available. One sealed sample shall be handed to the Vessel's representative, and the other sample or samples retained by the SELLER or its Supplier. By request of the buyer a fourth Marpol 73/78 Annex VI sample may be taken if physical supplier is in agreement and per their policy. The Marpol sample may only be used for purposes of confirming the sulphur content of the marine fuel and such other matters as are specifically set forth in Marpol Annex VI, Regulation 18. For any commercial purposes the "official commercial samples" from the physical supplier will be used. Tests to determine quality shall be made only from SELLERS' or supplier's samples and shall be made in accordance with standard test methods specified in the official publications of either the API, ASTM. IP or specifications as agreed in written confirmation of sale on the date of the Agreement. If vessel presents a sample from on-board the vessel, this sample may be received by SELLER or supplier, but this sample will not be recognized as an official retain sample of the delivery, and its tests results will not be recognized or accepted by SELLER and its suppliers as representative of the fuel delivered.

**TEL**: (407) 328-7757  **FAX**: (407) 328-0045  **EMAIL**: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com



**BUNKERS INTERNATIONAL**
Fueling Global Trade

3. Price

The price of Marine Fuel sold and delivered hereunder shall be the price set forth in the Special Terms. Unless otherwise agreed and set forth in the Special Terms, all prices are for delivery ex tank at the Supply Port and are exclusive of all delivery costs and all taxes, duties, fees or other assessments imposed or levied by any government authority (whether at the Supply Port or otherwise) or instrumentality thereof.

4. Barging

If the Vessel requires delivery by barge, then SELLER shall furnish this service within normal harbor limits at the Supply Port when and where SELLER or its Supplier has the necessary barging facilities available to effect delivery. BUYER shall pay all barging charges at the rates established by the SELLER from time to time plus transportation taxes, if any. If steam is required to effect delivery, the Vessel shall provide such steam free-of-charge. If tug pumping is required, then the BUYER shall pay all tug-pumping charges.

5. Payment Terms

Unless otherwise provided in the Special Terms, all sales shall be on a cash in advance or irrevocable letter of credit basis. All letters of credit procured by the BUYER in favor of the SELLER shall be in form and substance acceptable to the SELLER and issued only by a bank acceptable to the SELLER.

Payment to SELLER for all sales of Marine Fuel and for all charges related thereto (including, without limitation, delivery and any additional charges), if any, shall be made in full, without any right of set-off, discount or deduction. Payment shall be made in U.S. dollars by means of telegraphic transfer to the bank identified in the Special Terms or in the SELLER's invoice, as the case may be, for deposit to the SELLER's account as specified therein. Such transfer shall quote SELLER's invoice or order number, BUYER's name, Vessel supplied and SELLER's account number to which funds shall be deposited.

If the SELLER has extended credit to the BUYER, and if the applicable period expires on a Saturday, Sunday or any other day when the SELLER's bank is closed for business, then the BUYER shall arrange for the payment in question to be made within such shorter period as will enable the payment to have been made by the last day within the applicable credit period when the SELLER's bank was open for business. SELLER has the right to withdraw any credit terms offered, verbally or written, without prejudice at anytime before or after delivery, and demand immediate settlement of any and all invoices outstanding.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA



**BUNKERS INTERNATIONAL**
Fueling Global Trade

6. Deliveries

Deliveries of Marine Fuel shall be made during normal working hours on normal working days at the Supply Port. If the BUYER requires delivery or causes delivery to be made at any time other than during such periods, then the BUYER shall pay to the SELLER any addition expenses or cost incurred by the SELLER or its Supplier as result of such delivery.

If a delivery permit is required from any government authority or any instrumentality thereof, or from any public or private port authority, for any delivery of Marine Fuel hereunder, then the BUYER shall be responsible for obtaining same. No deliveries shall be made until such time as the BUYER has obtained all required delivery permits.

The BUYER shall give the SELLER written notice at least forty-eight (48) hours prior to the Delivery Date of the estimated time(s) on such date the Vessel will be ready to receive the Marine Fuel purchased by the BUYER. In such notice the BUYER shall, is necessary, advise the SELLER of any special condition, peculiarity, deficiency or defect of or with respect to the Vessel or its equipment which might delay, hinder or otherwise affect the mooring, unmooring or bunkering of the Vessel. If the BUYER fails to provide this notice and the Vessel for whatever reason is unable or refuses to accept Delivery Date, or if the BUYER provides such notice but request an extension to the Delivery Date of more than twenty-four (24) hours after twelve noon on such date, then the SELLER may, at its option, deliver the Marine Fuel to the Vessel at the requested new delivery time on a best efforts basis, suspend delivery subject to BUYER's agreement to a new price for the Marine Fuel, or cancel the delivery altogether, with or without prejudice to SELLER's rights under this Agreement.

The BUYER shall make all connections and disconnections between the delivery hose and the Vessel's intake pipe, and shall render all necessary and reasonable assistance and provide sufficient tankage and equipment to receive all deliveries of Marine Fuel supplied under the Agreement. All mooring and unmooring charges and port dues, if any shall be paid by the BUYER.

The BUYER shall be charged a minimum fee of $5000.00 for cancellation of delivery in addition to any and all costs incurred by the SELLER.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com



**BUNKERS INTERNATIONAL**
Fueling Global Trade

7. Title and Risk

SELLER has good and marketable title to all Marine Fuels delivered hereunder.
Delivery will be complete and risk of loss will pass to BUYER as the Marine Fuels
pass the intake flange of BUYER's vessel or nominated barge. The Marine Fuels
shall remain the SELLER's property until BUYER has paid for them in full. Until that
time BUYER shall hold them as bailee, store them in such a way that they can be
identified as SELLER's property, and keep them separate from BUYER's own
property and the property of any other person. Although the Marine Fuels remain
the SELLER's property until paid for, they shall be at BUYER's risk from the time of
delivery and BUYER shall insure them against loss or damage accordingly and in the
event of such loss or damage it shall hold the proceeds of such insurance on behalf
of SELLER as trustee of SELLER.

BUYER's rights to possession of the Marine Fuels shall cease if: a Buyer has not paid
for the Marine Fuels in full by the expiry of any credit period allowed by the SELLER
or b) BUYER is declared bankrupt or make a any proposal to his creditors of a
reorganization or other voluntary arrangement, or c) A receiver, liquidator, or
administrator is appointed in respect of BUYER's business. Upon cessation of
BUYER's right to possession of the Marine Fuels in accordance with clause 17.2, the
BUYER shall at his own expense make the Marine Fuels available to the SELLER
and allow SELLER to repossess them, or repossess other Marine Fuels onboard the
vessel that are of like nature, value, and quality, should Vessel have consumed
SELLER's fuel. BUYER hereby grants SELLER, his agents and employees an
irrevocable license to enter any premises where the Marine Fuels are stored in
order to repossess them at any time.

8. Demurrage and Delays

Neither the SELLER nor its Supplier shall be liable for any demurrage or loss
incurred by the BUYER or the Vessel caused directly or indirectly by delays due to
or resulting from weather (whether unusual or not), local congestion at the Supply
Port affecting the SELLER's delivery facilities (or those of its Supplier), the prior
commitment, nonavailability and/or malfunction of delivery barges, or any event of
Force Majeure. The BUYER shall be liable for demurrage at rates established by the
SELLER and for losses incurred by the SELLER as a result of any delay caused
directly or indirectly by the BUYER or the Vessel in the use of delivery or barging
facilities or in vacating a berth.

**TEL:** (407) 328-7757 **FAX:** (407) 328-0045 **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com



**BUNKERS
INTERNATIONAL**

Fueling Global Trade

9. Warranties

BUYER is solely responsible for specifying to the SELLER the type, grade and quantity of Marine Fuel to be supplied under the Agreement. SELLER warrants only that the Marine Fuel supplied shall conform to the specifications stated in the Special Terms and further that SELLER will convey to BUYER title thereto free and clear of all taxes, liens and encumbrances existing or in favor of any third parties. OTHER THAN THOSE EXPRESSLY STATED HEREIN, THERE ARE NO GUARANTEES OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS, OR SUITABILITY OF THE MARINE FUEL FOR ANY PARTICULAR PURPOSE, OR OTHERWISE.

10. Claims

Any claims as to shortage in quantity, defects in quality, or otherwise shall be made in writing by the BUYER within Fourteen (14) days after the delivery in question, otherwise all such claims shall be deemed to have been waived in their entirety. Any claims, notices, or information written on the delivery receipt or written in form of a memo or letter of protest from the BUYER'S vessel or crew at time of the delivery will not constitute notification of a claim by BUYER, nor will any signatures by SELLER'S or Supplier's delivery crew on any such documents constitute an acceptance or acknowledgment of BUYER'S claim. All claims by the BUYER are subject to the limitations set out in article 14.

11. Financial Responsibility

All sales of Marine Fuel hereunder are made on the credit of the Vessel as well as on the credit of the BUYER. The SELLER will have and assert any and all maritime liens available to it against the Vessel, wherever found, for the full amount of the delivered price of the Marine Fuel supplied to such vessel by the SELLER, plus accrued interest and collection costs. If the BUYER in any way breaches the Agreement, defaults in the payment of any indebtedness to the SELLER (whether arising out of the Agreement or otherwise) or become bankrupt or insolvent, or if the SELLER at any time considers the financial situation, position and or condition of the BUYER to be unsatisfactory, then the SELLER may, in addition to any other rights and remedies it may have, cancel or suspend deliveries hereunder until such time as the BUYER remedies such breach or default and/or provides suitable additional security and/or guarantees acceptable to the SELLER.

**TEL:** (407) 328-7757 **FAX:** (407) 328-0045 **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com

**BUNKERS INTERNATIONAL**
Fueling Global Trade

12. Agents

If the Agreement is concluded between the SELLER and an agent acting for or on behalf of a principals (whether disclosed or undisclosed), as BUYER(s), then such agent shall be jointly and severally liable with the BUYER(s), as a principal and not as an agent, for the due and proper performance of the Agreement and the prompt and punctual payment of all amounts due hereunder.

13. Interest and Collections

Without limitation to SELLER's right hereunder or otherwise, any payment not made when due shall bear interest at the rate of (I) two percent (2 %) per month, or (ii) the maximum rate allowed by law, running from the due date until the date payment is received by SELLER's bank.

In the event SELLER institutes legal proceedings for collection of payments not made by BUYER when due, all expenses incurred by SELLER in connection with such proceedings (including without limitation, attorney's fees and court costs) shall be for BUYER's account.

14. Limitation of Liability

SELLER and its Supplier shall not be liable for special, indirect, punitive or exemplary damages of any kind arising out of or in connection with the performance or non-performance of the Agreement.

15. Environmental Protection

BUYER represents and warrants that the Vessel is properly equipped, maintained and operated so as to avoid the escape, spillage or discharge of oil (a "spill") at the time of all deliveries of Marine Fuel hereunder. If a spill does occur while Marine Fuel is being delivered by the SELLER or its Supplier to the BUYER and the Vessel, then BUYER shall promptly take such action as is reasonably necessary to remove the oil and mitigate the effects of such spill. However, notwithstanding the cause of such spill, SELLER and/or its Supplier is hereby authorized, at its/ their option, to take such measures and incur such expenses (whether by employing its own resources or by contracting with others) as are reasonably necessary to remove the oil and mitigate the effects of such spill. In the event SELLER and/or its Supplier have exercised its/their option to remove the oil and mitigate the effect of such spill, BUYER agrees to cooperate and render such assistance as is reasonably required by SELLER and/or its Supplier. All expenses, damages, costs, fines and penalties arising from a spill or any pollution caused thereby shall by paid by the party that caused such spill by a negligent act or omission. If both parties have acted negligently, all such expenses, damages, costs, fines and penalties shall be divided between the parties in accordance with their respective degree of negligence. BUYER shall furnish to the SELLER and/ or Supplier photocopies of all

**TEL**: (407) 328-7757  **FAX**: (407) 328-0045  **EMAIL**: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA



**BUNKERS INTERNATIONAL**
Fueling Global Trade

documents and any other information concerning any spill, or a program for the prevention thereof that is reasonably required by the SELLER and/or its Supplier, or required by any regulation application at the Supply Port on the Delivery Date.

16. Force Majeure

Neither the BUYER nor the SELLER nor its Supplier shall be responsible for damages caused by delays, failure to perform in whole or in part any obligation hereunder (other than the payment of money), or noncompliance with any of the terms hereof when such delay, failure or noncompliance is due to or result from causes beyond the reasonable control of the affected party including, without limitation, acts of God, fires, floods, perils of sea, war (declared or un-declared), embargos, accidents, strikes, labor disputes, failure or shortage of vessel or barge service normally available to the SELLER or its Supplier to, breakdown of or damage to, or shortage in facilities used for production, refining or transportation of Marine Fuel, acts in compliance with requests of any governmental authority or person purporting to act thereof, or any other similar causes. Notwithstanding the provision of its Article, the BUYER shall not be relieved of any obligation to make payments for all sums due hereunder.

17. Notices

All notices, statements or other communications to be given by the BUYER to the SELLER or vice-versa shall be sufficient if given in writing by registered airmail, fax, or telegram as follows:

To the BUYER: at the address stated in the Special Terms or, if the Agreement is concluded by or though an agent of the BUYER, to the agent.

To the SELLER: Bunkers International Corp.
              110 Timberlachen Circle, Suite 1012
              Lake Mary, FL 32746 USA
              Fax: (407) 328-0045

18. Assignment

The BUYER may not assign any of its rights or obligations under the Agreement without the SELLER's prior written consent. The SELLER may, however, assign any of its rights and obligations hereunder without the BUYER's prior consent.

**TEL**: (407) 328-7757 **FAX**: (407) 328-0045 **EMAIL**: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA
www.bunkersinternational.com



**BUNKERS INTERNATIONAL**
Fueling Global Trade

---

19. Governing Law

These general terms and conditions of sale shall be governed by the laws of the United States of America and the State of Florida, without reference to any conflict of laws or choice of law rules which could otherwise result in the application of the laws of another jurisdiction. The laws of the United States shall apply with respect to the existence of a maritime lien, regardless of the country in which this Agreement is deemed made, the Marine Fuel is delivered or SELLER takes legal action. SELLER shall be entitled to assert its lien, attachment or other rights in any jurisdiction where it finds the Vessel or other assets of BUYER. Any disputes concerning quality or quantity shall only be resolved in the United States District Court for the Middle District of Florida, Tampa Division, or the Circuit Court of Hillsborough County, Florida. Disputes over payment and collection may be resolved, at SELLER's sole option, in the United States District Court for the Middle District of Florida, Tampa Division, or the Circuit Court of Hillsborough County, Florida or in the courts of any jurisdiction where either the Vessel or an asset of the BUYER may be found. BUYER hereby irrevocably submits to the jurisdiction of any such court, and irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum or its foreign equivalent to the maintenance of any action in any such court. BUYER and SELLER waive any right either of them might have to a trial by jury in any legal proceeding arising from or related to the Agreement or these general terms and conditions of sale.

20. Marpol 73/78 Annex VI

Seller does not warrant or guarantee that any physical supplier used to make deliveries to buyer is compliant with Marpol 73/78 Annex VI, regulations 14 and 18, as they apply to marine fuel deliveries, nor will seller be responsible for any costs, charges, or damages incurred by buyer from lack or non compliance of Marpol 73/78 Annex VI by either the physical supplier or buyers vessel personnel. Should physical supplier provide a certificate pursuant to Marpol Annex 73/78 Annex VI, such certificate does not constitute a general warranty of merchantability or fitness for a particular purpose of the marine fuel.

**TEL**: (407) 328-7757  **FAX**: (407) 328-0045  **EMAIL**: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.**bunkersinternational**.com



## BUNKERS INTERNATIONAL
Fueling Global Trade

### 21. Miscellaneous

To the extent that the General Terms are at variance with the Special Terms, the latter shall govern.

The Agreement may not be modified, discharged or terminated except by an instrument in writing signed by each of the parties hereof.

It is the responsibility of the Buyer and / or Buyer's representative / intermediary to inform vessel's owner of the contract and the Terms and Conditions that apply to the sale from the Seller. If we are not informed immediately, in writing, of owner's rejection, Bunkers International Corp will consider the owner to be aware of and in acceptance or our Terms and Conditions of Sale.

Waivers of performance by one party of any of the obligations of the other party under the Agreement, or of default by such party of any of its obligations hereunder, shall not operate as a waiver of performance of any obligation of such party or a future waiver of the same obligation, or a waiver of any future default.

The terms and conditions of the Agreement shall extend to, be binding upon, and inure to the benefit of, the heirs, successors, administrators, legal representatives, and permitted assigns of the respective parties hereto.

The descriptive headings contained herein are for convenience only and shall not control or affect the meaning or construction of any provision of the Agreement.

The Agreement constitutes the entire understanding and agreement between the Parties hereto and supersedes all prior oral or written agreements, representations and/or warranties.

**TEL**: (407) 328-7757 **FAX**: (407) 328-0045 **EMAIL**: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com

>> Sent: Friday, October 09, 2009 5:41 PM
>>> Subject: FIXED ON SUBS /
>>> <<CP DRAFT ARCELOR MITTAL.DOC>> <<Charterers
>>> Thanking Owners for their telephone call.
>>>
>>> We are fixed on subs till 12 Oct 2009 13:00 hours London time.
>>>
>>> Recap as follows:
>>> -----------------------------
>>> - All terms & conditions of this C/P to be strictly Private and
>>> Confidential
>>> and not to be disclosed to any third parties
>>> - Sub Charterers/Stem/shippers/receivers approval to be lifted
latest 12
>>> Oct
>>> 2009 13:00 London.
>>> - Sub Owners completion of charters questionnaire
>>> - Sub Owners submitting Class and P and I certificates
>>> - Sub receiving Owners P&I Club wording for LOIs for COB and
>>> Non-presentation
>>> -Vessel - Bulk Carrier
>>> MV-BEREKET - 4350 DWCC -
>>> SID - PANAMA FLAG - 80 BLT - DWT/GRT/NRT : 4350/2880/1610
>>> LOA/BM/DRFT/DEPTH MOULDED : 93.20/13.60/6.36/8.00 M
>>> GRN/BL : 205,000/200,000 CBFT - 3 X 10 TONS CRANES
>>> PLSKI CLASS - P+I CVRD - 2 HO/HA - STEEL FLRD - ALL AFT
>>> MC GREGOR HATCH COVERS - CRANES IN GOOD WORKING ORDER
>>> HO DIMS : NR 1 : 29,90 X 12.50 M - NR 2 : 29,90 X 12.50 M
>>> HA DIMS : NR 1 : 20.40 X 9.00 X 1.20 M-NR 2 : 21.00 X 9.00 X 1.20
M /
>>> ALL
>>> ABT>>> For
>>> -A/c ArcelorMittal or Nom
>>> -4,250 Mts 5 pct Molco
>>> About HRC 1300 mts coils unit max 24.5 mt
>>> About CRC 2900 mts coils unit max 17 mt
>>> (Will request the packing list from the plant)
>>> -Vessel to be fully suitable for the safe carriage of the intended cargo
>>> and
>>> to have sufficient tank top strength and Owners guarantee that
vessel >>> can
>>> lift all quantity including maximum plus tolerance.

# Exhibit B

>>> -Cargo to be loaded in clean, clear, unobstructed main holds with no
>>> obstacles or centerline bulkheads. Shape of holds not to hamper or
slow
>>> loading/discharging operations with any deviation from this to be
for
>>> Owners
>>> time/account.
>>> -1 SB AA Kandla , India
>>> -1 SB Hereke, Turkey
>>> -Owners to satisfy themselves on restrictions and workability bends
>>> -Stowage/Lashing/Securing to be adopted basis Customer of the Port
>>> -Laycan 15/20 October 2009.
>>> -Frt Usd 34.90 pmt fio l/s/d 1:1
>>> -Frt to be fully payable less 2.5% adcom directly by Charterers
within 3
>>> bdays to Owners nominated bank account where
>>> Beneficiary name to be as per freight invoice letterhead, aft s/r
b/ls
>>> marked 'frt payable as per c/p'. Charters also to have option of
>>> 'Freight
>>> Prepaid' bills of lading in which case Charters freight prepaid
payment
>>> clause to apply.
>>> -Frt invoice to be sent latest 24 Hrs after completion of loading
>>> -Load load 1,500 sshex
>>> -Disch: 1,500 sshex
>>> -Dem/Det USD 3,000 PDPR/HD at load
>>> -Dem/Det if any payable w/i 30 days aft receipt of supported
documents
>>> even
>>> by fax.
>>> -Chopt to have bills issued "Clean on Board " any other remarks
other
>>> than
>>> above will be inserted in the mates receipt and charterer will issue
LOI
>>> signed by Charters only
>>> -Charters or their agents will be authorised to issue/sign bills of
>>> lading.
>>> -If on vessel arrival at disport original b/l not available
>>> Owners/Master
>>> to
>>> release cargo against Charters LOI, signed by Charterers only.
>>> -Charters agents bends
>>> Load:
>>> --------
> Royal Shipping

## VERIFICATION

STATE OF NEW YORK    )
                        )     ss.:
COUNTY OF NEW YORK  )

      George N. Proios being duly sworn, deposes and says:

      1.     I am a member of the bar of this Honorable Court and am counsel to Plaintiff.

      2.     I have read the foregoing Complaint and I believe the contents thereof are true.

      3.     The reason this Verification is made by deponent and not by Plaintiff in that

Plaintiff is foreign corporation, no officers or directors of which are within this jurisdiction.

      4.     The sources of my information and belief are documents provided to me and

statements made to me by representatives of Plaintiff.

                               George N. Proios

Sworn to before me this
16th day of October, 2009

Notary Public

**JON WERNER**
NOTARY PUBLIC
02WE6149122
STATE OF NEW YORK
COMMISSION EXPIRES
JULY 3RD, 20 _10_